UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:03CV-240-R

WESTLAKE VINYLS, INC.                                              PLAINTIFF

v.

GOODRICH CORPORATION                                          DEFENDANT;
                                                         THIRD PARTY PLAINTIFF

v.

POLYONE CORPORATION                                THIRD PARTY DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on Goodrich Corporation's Motion in Limine to Exclude all Evidence that the Shore Tank 1 Dike Area Contains an Impermeable Layer (Docket #674). Westlake has filed a response (Docket #682). This matter is now ripe for adjudication. For the reasons that follow Goodrich's Motion in Limine is DENIED.

**BACKGROUND**

The modern Shore Tank 1 that has been operated by Westlake was constructed by Goodrich in 1981. It is a carbon steel tank that rests on a concrete foundation that is approximately five feet thick. The tank is surrounded by an engineered containment area that serves to contain EDC in the event of a release. Goodrich constructed a dike around the designated containment area, which is an above ground wall five to seven feet high, to contain any EDC that may be released within the engineered structure.[1]

---

[1] The preceding paragraph is taken from Westlake's response brief. The Court provides the following facts merely for background information, noting that Westlake failed to cite to any

On October 30, 2002, Westlake had a release of EDC from Shore Tank 1. Goodrich argues that the EDC from this spill contaminated the groundwater and that Westlake is liable for the costs of remediating that contamination. Westlake argues that the groundwater contamination is not a result of the spill, because the impermeable layer in the dike area of Shore Tank 1 would have blocked EDC at the surface, prohibiting it from penetrating the soil.

In March 2005, Westlake submitted a Closure Report to the state regulators regarding the remediation of the release. On May 13, 2005, Westlake received a letter from the state declaring that the regulators had found that the residual levels of EDC in soils are below regulatory levels of concern and thus no further remedial action was required with respect to the incident.

During Westlake's document production of July 5, 2005, Jennifer B. Swyers, Goodrich counsel, observed a document entitled Shore Tank No. 1 Soil Excavation Plan ("Plan") drafted by Erler & Kalinowski, Inc. ("EKI"), and dated August 26, 2003. Swyers testified by affidavit that the document stated that "the Shore Tank 1 dike area contains gravel, wood, and metal debris, and that such debris 'could act as preferential pathways for EDC migration.'"

On August 24, 2007, Swyers emailed Culver Halliday, counsel for Westlake, demanding the production of the Plan, stating that Westlake had improperly withheld the document. Halliday responded via email on August 27, 2007, stating that Westlake had complied with its discovery obligations throughout the litigation. In response to a later email from Swyers, on August 29, 2007, Halliday requested Swyers to provide Westlake with a copy of the Plan to assist Westlake with responding to Goodrich's request. On September 5, 2007, Swyers again emailed Halliday requesting that Westlake produce the Plan or, in the alternative, that Westlake provide justification

---

evidence in support of these factual assertions.

for withholding the document in the form of a privilege log. On September 7, 2007, Halliday responded that Judge Moyer had previously denied Goodrich's request that Westlake provide a log of EKI documents that have not been produced. The Plan was not produced. Goodrich did not file a motion to compel the production of the Plan.

Goodrich submits that the Plan was prepared in August 2003 by EKI as part of a project started in October 2002 to assist Westlake in complying with regulators' demands that it sufficiently remediate the October 30, 2002, release of EDC from Shore Tank 1. Goodrich cites to lines two through eight on page 319 of the deposition of Wendell Tinsley in support of this proposition. However, the cited testimony provides no mention of the Plan or of EKI.[2] Thus, this Court is left with Goodrich's unsupported contention of the purpose behind the Plan's production.

Westlake states that while remediation from the October 30, 2002, EDC release was ongoing, Goodrich claimed that Westlake was required to indemnify it for certain remediation costs. Westlake asserts that during this time, Westlake and its attorneys had its consultant prepare the Plan which was sent to both in-house and outside Westlake counsel for review and was marked "Revised Draft - Confidential, Attorney-Client Communication and Attorney Work Product." Westlake states that at the time the document was created, August 26, 2003, "the possibility of litigation with the state regulators was a real possibility," and that the Plan was prepared in the course of Westlake attempting to remediate the release to the full satisfaction of the state regulators. Westlake also

---

[2] The cited deposition testimony states:

> For example, the 2002 spill we continued remediating until we got to a clean closure agreement with the State of Kentucky. So we continued remediating, we continued sampling until we got to a point where we were convinced that we recovered the material that had been released into the soil.

3

indicates that at the time it prepared the Plan, it was aware of possible litigation with Goodrich, stating that "[u]nder these circumstances, the possibility of litigation with Goodrich was a possibility that Westlake reasonably believed was imminent." However, as was the case with Goodrich, Westlake cites to no evidentiary authority for any of these assertions. Thus, the Court is left with a classic "he said - she said" battle as to the purpose of the document.

## STANDARD

Pursuant to Federal Rule of Civil Procedure 37 if a party fails to obey an order to provide or permit discovery, "the court in which the action is pending may make such orders in regard to the failure as are just." The court may impose a variety of sanctions including an order "prohibiting that party from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(B).

## DISCUSSION

Here, Goodrich argues that Westlake failed to comply with the Court's discovery order entered on May 10, 2006, when it failed to produce the Plan and all drafts of the Plan. The order directed the parties to disclose to each other all analytical data within thirty days of the entry of the order if that data was generated during or after 1990 and within sixty days of the date of entry of the order if the data was generated prior to 1990. The order defined "analytical data" to mean:

> [A]ll data that measures or otherwise reflects the physical or environmental conditions of air, soil, soil subsurface, surface water, sediments, groundwater, or soil vapor (including, without limitation, waste characterization data and any data that has been obtained by a party in anticipation of pending litigation or administrative actions, but excluding any interpretation, analysis or reduction of data),
>
>   (A) that is
>
>     (1) obtained or generated by any of the parties, or their agents, retained experts (including non-testifying experts), or contractors,
>
>     (2) in any of the parties' possession, or

4

>>(3) under any of the parties' control; and

>(B) pertains to the environmental condition of the Calvert City Site (i.e. the Westlake EDC/VCM and CA&O Facility) and its surrounds (including, without limitation, the Northwest Area, the Tennessee River and its bed and sediments, the City of Paducah and its drinking water supplies, but excluding the Westlake PVC Plant in Calvert City.)

Goodrich states that the information contained in the Soil Excavation Plan constitutes data that is required to be produced pursuant to the Court's discovery order. Goodrich also asserts that because the Soil Excavation Plan is a non-litigation related environmental remediation plan, not prepared in anticipated of litigation, Westlake cannot withhold the document pursuant to the work product doctrine. Westlake argues that it has produced all the data contained in the Soil Excavation Plan multiple times to Goodrich and that the Soil Excavation Plan was not "data" under the Court's order and, therefore, it was not subject to production. Westlake also argues that the Soil Excavation Plan is exempt from discovery pursuant to the attorney-client privilege and attorney work product doctrine.

Westlake asserts that all data contained in the Plan was produced pursuant to the Data Sharing Order with bates number PL-EKI09-00001016 through PL-EKI109-00002148, which bates numbers were selected by Goodrich's attorneys. Westlake states that the data in the Plan was also contained within the Closure Report which was produced during discovery with bates numbers PL-ENV-001-01281 through PL-ENV-001-2148. Although Westlake attaches these documents as exhibits to their response to the present motion, this Court has no way of determining whether all the data contained in the Plan is presented in these exhibits. Westlake has not presented the Plan itself nor has it attached an affidavit by any Westlake representative stating that the underlying data is the same.

If the underlying data contained in the Plan has been produced to Goodrich, the Plan would not be subject to production pursuant to the Court's discovery order entered on May 10, 2006. That order specifically excluded from the required production any interpretation, analysis, or reduction of data that measures or otherwise reflects the physical or environmental conditions of air, soil, soil subsurface, surface water, sediments, groundwater, or soil vapor.

The Court finds that it cannot make a ruling on whether the Plan is protected from production by the attorney-client privilege or the work product privilege at this time. These issues are collateral to the motion at hand, thus the Court does not feel it necessary to rule on them at this juncture.

## CONCLUSION

For the foregoing reasons, Goodrich Corporation's Motion in Limine to Exclude all Evidence that the Shore Tank 1 Dike Area Contains an Impermeable Layer is DENIED. It is further ordered that Westlake shall produce to Goodrich an affidavit stating that all underlying data contained in the Plan has been produced to Goodrich. If Westlake does not produce such an affidavit, the Court shall reconsider its ruling.

An appropriate order shall issue.